IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

MICHAEL EGGLESTON,
   *Defendant.*

Criminal Action No. ELH-15-0569

**MEMORANDUM OPINION**

Michael Eggleston, the self represented defendant, has filed an "Emergency Pro Se Motion Pursuant to 18 USC § 3582(c)(1)(A)." ECF 59. The motion is supported by a copy of defendant's submission to the Warden at FCI Fort Dix, where the defendant is incarcerated. ECF 59-1. And, the defendant filed two supplements to his motion. ECF 63; ECF 71. I shall refer to ECF 59, ECF 63, and ECF 71 collectively as the "Motion." The government opposes the Motion (ECF 67), supported by copies of defendant's medical records. ECF 67-1. Defendant has replied. ECF 69.

For the reasons that follow, I shall deny the Motion, without prejudice.

**Factual Background**

On October 28, 2015, the defendant was indicted and charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF 1. A Superseding Information was filed on April 21, 2016, charging the defendant with possession with intent to distribute cocaine and ethylone, in violation of 21 U.S.C. § 841(a)(1) (Count One), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two). ECF 28.

The defendant entered a plea of guilty to Counts One and Two of the Superseding Information on May 19, 2016. ECF 36. In the Plea Agreement (ECF 38), tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 60 months imprisonment as to

Count One, and 60 months imprisonment, consecutive, as to Count Two, for a total sentence of 120 months' imprisonment.  *See* ECF 38, ¶ 7.[1]

The Plea Agreement also contained a stipulation of facts.  *See* ECF 38 at 4.  According to the stipulation, law enforcement observed a handgun in Eggleston's waistband, so they followed him into the home he was entering and conducted a search of the residence.  *Id.*  During their search, officers recovered a .380 caliber semi-automatic pistol and two Ziploc bags that contained cocaine and ethylone, respectively.  *Id.* The defendant admitted "that he…knowingly possess[ed] [the drugs] with the intent to distribute them to other persons."  *Id.* at 5. Further, the defendant admitted "that he possessed this firearm in furtherance of the drug trafficking crime[.]"  *Id.*

The Presentence Report ("PSR," ECF 44) reflects that, for Count One, based on the quantity of drugs involved, the defendant had a base offense level of six. *Id.* ¶ 13. However, the defendant qualified as a Career Offender under § 4B1.1 of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.").  *Id.* ¶ 19.  As a result, his offense level increased dramatically, to 32.  *Id.*

As a Career Offender, defendant's Criminal History Category was VI. *Id.* ¶ 38. However, even if Eggleston were not a Career Offender, he would have had a Criminal History Category of VI because he had 14 criminal history points.  *Id.* ¶¶ 35-37.

After three deductions for acceptance of responsibility, the defendant had a final offense level of 29 for Count One.  *Id.* ¶ 22.  His Guidelines for Count One called for a sentence ranging between 151 and 188 months of imprisonment.  *Id.* ¶ 71. However, because the defendant qualified as a Career Offender and was also convicted of a violation of 18 U.S.C. § 924(c), the Guidelines

---

[1] Count Two required a mandatory minimum sentence of five years, consecutive, with a maximum sentence of life imprisonment.

range increased to 262 to 327 months in prison.  *Id.* ¶¶ 24, 69, 70; *see* U.S.S.G. §§ 4B1.1(c)(3); 5G1.2(e).

Further, the PSR reflects that the defendant was treated for asthma with an inhaler.  ECF 44, ¶ 63.  It also referenced the defendant's challenges with school, and indicates that defendant dropped out of school in the 10th grade.  *Id.* ¶ 66.  The defendant also related an extensive substance abuse history, beginning at age 12 with alcohol and progressing to other illicit substances.  *Id.* ¶ 65.  In addition, it reported that the defendant is the father of six children from four relationships.  *Id.* ¶¶ 57-61.

Sentencing was held on August 2, 2016.  ECF 46.  At the time, the defendant was 34 years old.  ECF 44 at 2.  In accordance with the terms of the Plea Agreement, I imposed a total sentence of ten years' imprisonment, with credit from August 19, 2015.  ECF 48.  Thus, Eggleston's sentence was well below the advisory sentencing Guidelines range.

Eggleston, who was born in 1982, is now 38 years old.  He is presently incarcerated at FCI Fort Dix.  To date, Eggleston has served about 63 months of his sentence. This equates to about 52% of his sentence, exclusive of good time credits under 18 U.S.C. § 3624(b).[2]

In addition to asthma, defendant also suffers from obesity.  ECF 69 at 4. As of August 21, 2019, the defendant had a BMI of approximately 30.9.  ECF 67-1 (Medical Records) at 29, 42.

In a letter dated May 5, 2020, defendant requested a reduction in sentence from the Warden. ECF 59-1. The Warden has not responded to defendant's letter. ECF 67 at 7.  But, the government concedes that the defendant has exhausted his administrative remedies. *Id.*

Additional facts are included, *infra*.

---

[2] The government has provided the Court with extensive medical records for the defendant. But, it has not provided the Court with information concerning the defendant's projected release date.  Nor has the defendant provided his projected release date.

### I.      Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).

4

As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

>  (i) extraordinary and compelling reasons warrant such a reduction;
>
>  (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>  and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

As indicated, in resolving a compassionate release motion, a court must consider the factors in 18 U.S.C. § 3553(a).  *See Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 2020 WL 6743609, at *2 (4th Cir. Nov. 17, 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing

factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). And, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

      (I)  suffering from a serious physical or medical condition,

      (II) suffering from a serious functional or cognitive impairment, or

      (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D) is titled "**Other Reasons.**" It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Court may not rely on the Program Statement, however. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 820 F. App'x at 230.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*,

7

560 U.S. at 827.  But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

## II.     COVID-19[3]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[4]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.  *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."  *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.  *Id.*

That said, the Court must underscore that the virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe

---

[3] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[4] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of November 18, 2020, COVID-19 has infected more than 11.5 million Americans and caused over 250,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Nov. 18, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt.  Although many businesses and schools have reopened, many are subject to substantial restrictions.   And, in view of the recent resurgence of the virus, businesses and schools are again facing restrictions or closure.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available, although it appears that a vaccine is on the horizon.  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect

the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.  According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight, pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).  Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2.  Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high.").  Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others.  Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*,

10

TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL

3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 67 at 5-7 (detailing measures that BOP has implemented at BOP facilities). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[5] As of November 18, 2020, the BOP had 125,308 federal inmates and 36,000 staff. Also as of November 18, 2020, the BOP reported that 3,048 inmates and 1,113 BOP staff currently tested positive for COVID-19; 18,160 inmates and 1,677 staff had recovered from the virus; and 141 inmates and two staff members have died from the virus. And, the BOP has completed 75,896 COVID-19

---

[5] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?name=styln-coronavisur&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=LegacyCollection&impression_id=78b44851-1885-11eb-baa7-3f68d7b814c8&variant=1_Show.

And, on November 21, 2020, the *New York Times* wrote in an editorial: "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems*." America Is Letting the Coronavirus Ravage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html?referringSource=articleShare.

tests. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 18, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Ft. Dix, where the defendant is a prisoner, the BOP reported that, as of November 23, 2020, 238 inmates and 18 staff currently test positive for COVID-19. And, 45 inmates and six staff members have recovered at the facility. There have been no deaths due to COVID-19 at Ft. Dix. The facility has completed 1,209 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 23, 2020).

### III. Discussion

Eggleston moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19. ECF 59 at 1. In particular, defendant suffers from asthma and obesity. *Id.*; ECF 69 at 4; ECF 67-1 at 16, 29. He explains that his asthma "requires regular use of albuterol inhalers and has required the use of a nebulizer in the past." ECF 59 at 1. In addition, defendant maintains that since his 2019 medical visit, his breathing has worsened. ECF 69 at 4. As a result, he now requires frequent use of his inhaler due to his asthma. *Id.* Further, defendant has a BMI of 30.9 and explains that his obesity has been aggravated due to the current restrictions on the ability to exercise. ECF 67-1 at 29; ECF 69 at 4. Moreover, Eggleston contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of reducing his sentence to time served. ECF 59 at 3.

The government opposes defendant's Motion at each step of the analysis. Although the government acknowledges that defendant has been diagnosed with asthma, it maintains that "his medical records do not support the contention that he has either moderate or severe asthma." ECF 67 at 9. To the contrary, asserts the government, the defendant's medical records from August 2019 demonstrate lung function "well above the 80% mark that defines moderate asthma." *Id.* In

addition, the government notes that the defendant has a BMI of approximately 30.9, but it points out that this is only "slightly above" the CDC guidelines for at risk conditions. ECF 67 at 10. Therefore, in the government's view, defendant's health conditions do not merit relief. ECF 67 at 9. And, in any event, the government argues that Eggleston remains a danger to the community and the § 3553(a) factors militate against reducing his sentence. *Id.* at 11-14.

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). However numerous courts have found that, in light of the COVID-19 pandemic, severe obesity, and in particular a BMI above 30, qualifies as a compelling reason for compassionate release. *See, e.g., United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release in light of COVID-19); *United States v. Staten*, PJM-01-284-4, 2020 WL 4904270, at *2 (D. Md. Aug. 18, 2020) (finding an "extraordinary and compelling reason" for compassionate release based on a BMI of 38); *United States v. Dawson*, No. 18-40085, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release based on a defendant's obesity: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19."); *United States v. Daniels*, No. 19-00709, 2020 WL 181342, at *2 (N.D. Cal. Apr. 9, 2020) (finding severe obesity constitutes compelling reason for release).

In addition, given the current number of cases at FCI Ft. Dix, it cannot be disputed that the coronavirus has entered and continues to spread around the prison. Accordingly, I am satisfied that the defendant satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must also consider whether, if released, Eggleston would pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). The government urges that conclusion, citing the seriousness of his offense and the defendant's prior criminal history, which consists of numerous prior convictions. ECF 67 at 11-12.

Eggleston argues that the government "has grossly overstated [his] 'dangerousness.'" ECF 69 at 6. And, he notes that courts have "still granted compassionate release to other inmates similarly situated." *Id.* at 5.

As I see it, the sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of reducing Eggleston's sentence at this time. These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Eggleston's prior record is particularly relevant to this analysis. From 2003 to 2013, defendant amassed eight convictions. ECF 44, ¶¶ 27-33. In 2003, for instance, defendant was convicted of attempted distribution of cocaine and sentenced to ten years, all suspended. *Id.* ¶ 27. And, later that year, defendant was convicted of distribution of heroin and was sentenced to seven years' imprisonment, most of which was suspended; he served about six months. *Id.* ¶ 28. In addition, defendant's Career Offender designation was based on two convictions for distribution of marijuana and possession with intent to manufacture methylone, in 2011 and 2012. *See id.* ¶¶ 32, 33. Yet, these numerous prosecutions and convictions did not deter defendant from the

commission of the offense that led to his federal prosecution. In fact, while defendant was still on probation for the 2012 offense, he committed the instant offense.

Moreover, as the government observes, there is little in the way of employment history for the defendant, beyond distribution of drugs. And, the underlying offense is quite serious; it involved a combination of drug distribution with a firearm. In particular, the defendant was armed with a .380 caliber handgun. ECF 44, ¶ 7.

In the time that defendant has been in federal prison, he has not received any disciplinary infractions. ECF 69 at 6. His good behavior while incarcerated warrants recognition under 18 U.S.C § 3553(a). In addition, Eggleston has earned his GED and participated in multiple BOP programs, including a drug education class. ECF 59 at 3. These are positive steps on defendant's part. However, the defendant has only served about 52% of his sentence. And, that sentence is significantly below the Guideline's range.

Given the facts of the offense, coupled with the defendant's prior criminal history and the abbreviated time that defendant has served to date, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

### IV.     Conclusion

For the forgoing reasons, I shall deny the Motion (ECF 59), *without prejudice*.

An Order follows, consistent with this Memorandum Opinion.

Date:   November 24, 2020                              /s/
                                                       Ellen Lipton Hollander
                                                       United States District Judge