IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

MICHAEL EGGLESTON,
*Defendant.*

Criminal Action No. ELH-15-0569

**MEMORANDUM OPINION**

Michael Eggleston, the self represented defendant, previously filed an "Emergency Pro Se Motion Pursuant to 18 USC § 3582(c)(1)(A)." ECF 59. He also filed two supplements to his motion. ECF 63; ECF 71. I shall refer to ECF 59, ECF 63, and ECF 71 collectively as the "First Motion." The government opposed the First Motion (ECF 67), supported by copies of defendant's medical records. ECF 67-1. Defendant replied. ECF 69.

By Memorandum Opinion (ECF 72) and Order (ECF 73) of November 24, 2020, I denied the First Motion. I concluded that, on the basis of defendant's asthma and obesity, the defendant established the "extraordinary and compelling prong" under 18 U.S.C. § 3582. ECF 72 at 14. However, under 18 U.S.C. § 3582(c)(1)(A)(ii) and 18 U.S.C. § 3553(a), I concluded that compassionate release was not warranted. *Id.* at 15.

Thereafter, defendant moved the Court to reconsider its ruling. ECF 74 ("Second Motion"). The government opposes the Second Motion. ECF 79. It also provided the Court with additional medical records of defendant. ECF 79-2. Defendant did not reply.

Then, through the Office of the Federal Public Defender, defendant filed a "Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 86 ("Third Motion"). In the Third Motion, defendant sought redress for the failure of the Bureau of Prisons ("BOP") to credit his federal sentence with time that he spent in State custody on a charge of violation of

probation. According to defendant, his sentence was unfairly extended by eleven months. *Id.* at 1. By Memorandum Opinion (ECF 90) and Order (ECF 91) of December 18, 2023, I denied the Third Motion.

The Second Motion has been pending for quite some time. No hearing is necessary to resolve the Second Motion. For the reasons that follow, I shall grant the Second Motion and reduce defendant's sentence to time served plus fourteen days.

## I.    Factual and Procedural Background[1]

On October 28, 2015, the defendant was indicted and charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF 1. An Order of Detention was entered on November 25, 2015. ECF 10.[2] A Superseding Information was filed on April 21, 2016, charging the defendant with possession with intent to distribute cocaine and ethylone, in violation of 21 U.S.C. § 841(a)(1) (Count One), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two). ECF 28.

The defendant entered a plea of guilty on May 19, 2016, to Counts One and Two of the Superseding Information. ECF 36. In the Plea Agreement (ECF 38), tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a sentence of 60 months of imprisonment as to Count One and 60 months imprisonment, consecutive, as to Count Two, for a total sentence of 120 months' imprisonment. *See* ECF 38, ¶ 7. The sentence for Count Two corresponded to the mandatory minimum term of imprisonment.

The Plea Agreement contained a stipulation of facts. *See* ECF 38 at 4. According to the stipulation, law enforcement observed a handgun in Eggleston's waistband, so they followed him into the home he was entering and conducted a search of the residence. *Id.* During their search,

---

[1] The Court incorporates here the factual summaries set forth in ECF 71 and ECF 90.

officers recovered a .380 caliber semi-automatic pistol and two Ziploc bags that contained cocaine and ethylone, respectively. *Id.* The defendant admitted "that he…knowingly possess[ed] [the drugs] with the intent to distribute them to other persons." *Id.* at 5. Further, the defendant admitted "that he possessed this firearm in furtherance of the drug trafficking crime[.]" *Id.*

The Presentence Report ("PSR," ECF 44) reflects that, for Count One, based on the quantity of drugs involved, the defendant had a base offense level of six, before deductions for acceptance of responsibility. *Id.* ¶ 13. However, the defendant qualified as a Career Offender under § 4B1.1 of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). *Id.* ¶ 19. As a result, his offense level increased dramatically, to

32. *Id.*

According to the PSR, *id.* ¶ 38, the predicate offenses for the Career Offender designation were conspiracy to possess with intent to distribute marijuana (*id.* ¶ 31); distribution of marijuana (*id.* ¶ 32); and possession with intent to manufacture methylone (*id.* ¶ 33). Those offenses took place in 2011 and 2012. For both the marijuana conspiracy offense and the marijuana distribution offense, defendant received concurrent sentences of five years of incarceration, with four years suspended. *See id.* ¶¶ 31, 32. Of the one-year term, defendant served only a few months in custody. *Id.* For the methylone offense, defendant again received a sentence of five years of imprisonment, of which four years were suspended. *Id.* ¶ 33.[3]

As a Career Offender, defendant's Criminal History Category was VI. *Id.* ¶ 38. However, even if Eggleston were not a Career Offender, he would have had a Criminal History Category of

---

[2] The defendant previously spent time in State custody. *See* ECF 44 at 1.

[3] Defendant did not score points for two felony offenses that occurred in 2003, when he was twenty-one years old. *See* ECF 44, ¶¶ 27, 28. One was for attempted distribution of cocaine, for which he received a ten-year sentence, all of which was suspended. *Id.* ¶ 27. The other offense was for distribution of heroin, for which defendant received a sentence of seven years, most of

VI because he had 14 criminal history points. *Id.* ¶¶ 35-37.[4]

After three deductions for acceptance of responsibility, the defendant had a final offense level of 29 for Count One. *Id.* ¶ 22.  His Guidelines for Count One called for a sentence ranging between 151 and 188 months of imprisonment. *Id.* ¶ 71. However, because the defendant qualified as a Career Offender and was also convicted of a violation of 18 U.S.C. § 924(c), the Guidelines range increased to 262 to 327 months. *Id.* ¶¶ 24, 69, 70; *see* U.S.S.G. §§ 4B1.1(c)(3); 5G1.2(e).[5]

The PSR reflects that the defendant was treated for asthma with an inhaler. ECF 44, ¶ 63. It also referenced the defendant's academic challenges, and indicated that defendant left school in the 10th grade. *Id.* ¶ 66.  He had not obtained a GED. *Id.* at 2.   The defendant also related an extensive substance abuse history, beginning at age 12 with alcohol and progressing to illicit substances. *Id.* ¶ 65.  In addition, the PSR noted that the defendant is the father of six children from four relationships. *Id.* ¶¶ 57-61.

Sentencing was held on August 2, 2016.  ECF 46.  At the time, the defendant was 34 years old.  ECF 44 at 2.  In accordance with the terms of the Plea Agreement, I imposed a total sentence of ten years' imprisonment, with credit from August 19, 2015.  ECF 48.

With respect to the First Motion, I found that defendant suffers from both asthma and obesity.  ECF 72 at 14; *see* ECF 69 at 4. As of August 21, 2019, the defendant had a Body Mass Index ("BMI") of approximately 30.9.  ECF 67-1 (Medical Records) at 29, 42.   Moreover, I determined that defendant established an extraordinary and compelling reason for compassionate

---

which was suspended. *Id.* ¶ 28.  In particular, he appears to have received time served.  *Id.*

[4] Defendant was assigned two points for possession of marijuana in 2005.  ECF 44, ¶ 29. He received another two points for marijuana possession in 2009.  *Id.* ¶ 30.

[5] If defendant were not a Career Offender, his final offense level for Count One would have been a four, and his Guidelines would have been zero to six months.  Combined with the mandatory term of five years for the § 924(c) offense, defendant's combined guidelines would have been 60 to 66 months.

release.  ECF 72 at 14.  But, under 18 U.S.C. § 3553(a), I concluded that release was not warranted.  It is this ruling that defendant asks the Court to reconsider.

Eggleston, who was born in February 1982, is now almost 42 years old.  He is presently incarcerated at FCI Schuylkill.  To date, Eggleston has served about 101 months of his 120-month sentence.  This equates to about 84% of his sentence, exclusive of good time credit under 18 U.S.C. § 3624(b).  He has a projected release date of February 6, 2025.  *See* https://www.bop.gov/inmateloc/

In January 2021, after my ruling as to the First Motion, defendant contracted COVID-19. ECF 79-2 at 13, 17.  And, in April 2021, he was vaccinated for COVID-19.  ECF 79-3.

## II.  Standard of Review

### A.

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see United States v. Centeno-Morales*, ___ F.4th ___, 2024  WL 58475, at *2 (4th Cir. Jan. 5, 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.  The First Step Act ("FSA"), enacted in 2018, constitutes a statutory exception to the general rule, under certain circumstances.  *See* Pub. L. No.

115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)); *see also Centeno-Morales*, 2024 WL 58475, at *2; *United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).

Section 3582 of Title 18 of the United States Code was first enacted as part of the Sentencing Reform Act of 1984.  As originally enacted, it permitted a court to alter a sentence only upon motion by the Director of the Bureau of Prisons.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See Bethea*, 54 F.4th at 831; *see*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, compassionate release was an infrequent occurrence, because the BOP rarely filed such a motion on an inmate's behalf.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).  However, as a result of the enactment of the First Step Act in December 2018, a federal inmate could file a motion for compassionate release directly with the court, so long as the inmate first exhausted administrative remedies.

With the passage of the FSA in 2018, Congress "broadened" the authority of courts to grant sentencing modifications.  *Malone*, 57 F.4th at 173.  Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes courts to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194. This provision constitutes "an exception" to the general rule that a federal sentence is final. *Ferguson*, 55 F.4th at 267; *see United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).  The

FSA amounted to a sea change in the law.

In particular, the 2018 FSA authorized a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added). That is, once a defendant has exhausted his administrative remedies, or after 30 days have passed from the date on which the warden has received the defendant's request, the defendant may petition a court directly for compassionate release. *Ferguson*, 55 F.4th at 268; *Jenkins*, 22 F.4th at 169; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.[6]

But, there are important restrictions. Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are met. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. In other words, the analysis consists of "two steps," *Bond*, 56 F.4th at 383, and "the district court must conduct a two-step analysis." *Centero-Morales*, 2024 WL 58475, at *2.

"First, the court must determine the prisoner is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' supporting relief." *Bethea*, 54 F.4th at 831 (citation omitted); *see also Bond*, 56 F.4th at 383; *Hargrove*, 30 F.4th at 194-95; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021). If that criterion is met, the court "must then find that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see also Malone*, 57 F.4th at 174; *Bond*, 56 F.4th at 384; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *Kibble*, 992 F.3d at 330.

---

[6] Section 3582(c)(1)(A) "does not require issue exhaustion." *Ferguson*, 55 F.4th at 269.

Significantly, "many case-specific facts fit under the broad umbrella of the Section 3553(a) factors." *United States v. Jackson*, 952 F.3d 492, 500 (4th Cir. 2020). Moreover, under the factor of "respect for the law," the court may consider a defendant's plea agreement. *Bond*, 56 F.4th at 384.

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *Jenkins*, 22 F.4th at 169; *see Centeno-Morales*, 2024 WL 58475, at *3; *Bond*, 56 F.4th at 384; *Bethea*, 54 F.4th at 834; *Kibble*, 992 F.3d at 330. Notably, "when the same judge who sentenced the defendant rules on the compassionate release motion," it weighs against the finding of an abuse of discretion. *Bethea*, 54 F.4th at 834 (citation omitted); *see Centeno-Morales*, 2024 WL 58475, at *3. As the Fourth Circuit has said, "[w]hen the same sentencing judge assesses the § 3553(a) factors again for compassionate release purposes, there's a strong indication that the judge knows of the defendant's circumstances, both favorable and unfavorable, and considers the totality of the record when assessing whether a different sentence is now warranted." *Bethea*, 54 F.4th at 834 (citation omitted).

A district court abuses its discretion if "'it acts arbitrarily or irrationally, fails to follow statutory requirements, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error o flaw.'" *Centeno-Morales*, 2024 WL 58475, at *4 (citation omitted). And, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

Of relevance, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x

229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)).  The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement").  As indicated, amendments to the Policy Statement took effect on November 1, 2023.

Prior to the amendments, the Policy Statement began: "Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. 1B1.13 (2021).  Interpreting this language in *McCoy*, 981 F.3d at 282, the Fourth Circuit stated that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."  Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts."  *McCoy*, 781 F.3d at 281.  As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted); *see also Jenkins*, 22 F.4th at 170.

As mentioned, the Fourth Circuit based its holding in *McCoy* and other cases on a version of the Policy Statement that has since been amended, effective November 1, 2023.  *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254 (May 3, 2023) (providing notice of amendments to Congress).  In particular, as a result of the amendments that took effect on November 1, 2023, the Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ."  U.S.S.G. § 1B1.13 (2023) (emphasis added).  Thus, the Sentencing Commission has made the Policy Statement expressly applicable to defendant-filed motions under § 3582(c)(1)(A).  *Cf. McCoy*, 981 F.3d at 282.

Therefore, it appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the

effect that "§ 1B1.13 is not an 'applicable' policy statement," is no longer consistent with the Guidelines, as amended. This is because the Policy Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A).

A court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A). The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

> (B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1) (A) extraordinary and compelling reasons warrant the reduction; or
> >
> > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> >
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) the reduction is consistent with this policy statement.

The Policy Statement identifies six circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *Id.* § 1B1.13(b)(1)–(6). These are as follows: certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, *id.* § 1B1.13(b)(1); the defendant's age, *id.* § 1B1.13(b)(2); the defendant's family circumstances, *id.* § 1B1.13(b)(3); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4); the defendant received an "unusually long sentence," *id.* § 1B1.13(b)(6); and "any other circumstances or combination of

circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5).

Prior to the amendments, the district court was obligated to consider all non-frivolous arguments for sentence reduction based on intervening changes in the law and factual developments. *Concepcion v. United States*, ___ U.S. ___, 142 S. Ct. 2389, 2396 (2022); *Troy*, 64 F.4th at 184; *United States v. Reed*, 58 F.4th 816, 822 (4th Cir. 2023); *United States v. Brice*, 2022 WL 3715086, at *2 (4th Cir. Aug. 29, 2022) (per curiam). Where appropriate, the district court had to "account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 197, 203 (4th Cir. 2023); *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n.3. However, such developments did not warrant a recalculation of the Guidelines. *Troy*, 64 F.4th at 184.

Notably, § 1B1.13(c) of the Policy Statement now specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." However, "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*

Section 1B1.13(d) of the Policy Statement is also relevant. It provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.*

11

Even if a defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion); *Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors). Notably, the recent amendments to the Guidelines did not alter this requirement.

The "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting

*Jackson*, 952 at 500). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

"A district court need not provide an exhaustive explanation analyzing every § 3553(a) factor." *Jenkins*, 22 F.4th at 170. Nor is it "required to address each of a defendant's arguments when it considers a motion for compassionate release." *Id.*; *see Chavez-Meza v. United States*, ___ U.S. ___, 138 S. Ct. 1959 (2018); *High*, 997 F.3d at 187. But, as mentioned, a district court abuses its discretion when, among other things, it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

That said, "[h]ow much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In providing such an explanation, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors when explaining its compassionate release ruling." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332. Notably, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190).

In any event, a defendant may not use a motion for compassionate release to collaterally

attack his conviction or sentence.  *Ferguson*, 55 F.4th at 270.  As the *Ferguson* Court made clear, 28 U.S.C. § 2255 is generally "'[t]he exclusive remedy'" for such a challenge.  (Citation omitted; alteration in *Ferguson*).

## B.

As noted, defendant has moved for reconsideration of this Court's denial of his First Motion.

As the government observes, the Federal Rules of Criminal Procedure do not expressly provide for motions for reconsideration.  ECF 79 at 1-2.  Nevertheless, the government acknowledges that "federal courts have entertained" such motions in criminal cases, using the civil rules of procedure "for guidance . . . ."  *Id.* at 2.  *See United States v. Curry*, 05-CR-282, 2021 WL 2644298, at *2 (M.D.N.C. June 25, 2021); *Zellner v. United States*, 99-CR-164, 2020 WL 5240579, at *2 (E.D. Va. Sept. 2, 2020).  An applicable ground permits reconsideration to "prevent manifest injustice."  *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).

## III.  COVID-19

### A.

Health officials confirmed the first case of COVID-19 in the United States on January 31, 2020.[7]  *United States v. Pair*, 84 F. 4th 577, 580 (4th Cir. 2023) (citation omitted).  Then, on March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.  *See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020).[8]  Two days later, on March 13, 2020, President Trump declared a national emergency concerning the COVID-19 pandemic.

---

[7] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[8] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://perma.cc/24J3-UQZN.

*Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19)*, TRUMP WHITE HOUSE (Mar. 13, 2020), https://perma.cc/WF55-8M4P.   That declaration was extended on several occasions.  *See*, *e.g.*, 88 Fed. Reg. 9385 (Feb. 10, 2023).

The pandemic spawned "a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020), *aff'd in part, dismissed in part*, 2022 WL 1449180 (4th Cir. May 9, 2022) (per curiam).  Indeed, for a significant period, the pandemic "produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 752–53 (E.D. Mich. 2020), *vacated on other grounds*, 815 F. App'x 978 (6th Cir. 2020).  Schools and businesses were closed, or operated on a limited basis, in an effort to thwart the spread of the virus, which is extremely contagious.  *Pair*, 84 F.4th at 589; *see Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (August 11, 2022), https://perma.cc/QGL2-3URS.  As the Fourth Circuit has put it, in the early months of 2020, "a new reality set in.  Nations around the world announced stringent limitations on in-person interaction . . . businesses ground to a halt; and death tolls mounted."  *Pair*, 84 F.4th at 580.

The judges of this Court "have written extensively about the pandemic."  *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases).  Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.  *Id.*  Nevertheless, the Court must reiterate that the COVID-19 pandemic has been described as the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020), *abrogation on other grounds recognized by United States v. Phillibert*, 557 F. Supp. 3d 456 (S.D.N.Y. 2021) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no

15

elaboration.").

People infected with the coronavirus sometimes experience only mild or moderate symptoms.  But, particularly at the outset of the pandemic, the virus caused severe medical problems as well as death, especially for those in "high-risk categories . . . ."  *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted).  On May 11, 2022, the United States "reached more than 1 million COVID-19 deaths, according to a Reuters tally, crossing a once-unthinkable milestone about two years after the first cases upended everyday life."  Trevor Hunnicutt & Jeff Mason, *Biden Marks One Million U.S. COVID Deaths After Losing Political Battles*, REUTERS (May 12, 2022), https://perma.cc/TLA5-YNFB.  And, as of March 10, 2023—the last day on which Johns Hopkins University updated its COVID-19 data—more than 103.8 million Americans had been infected with COVID-19.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://perma.cc/J7XS-FYHT.

The Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that may increase the chance of severe illness due to the coronavirus, and has repeatedly revised its guidance concerning medical conditions that pose a greater risk of severe illness due to COVID-19.  The CDC most recently updated its guidance in May 2023 to reflect the most current data.  *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 11, 2023), https://perma.cc/923J-T5P8.

According to the CDC, the factors that increase the risk of severe illness include cancer; chronic kidney disease; chronic liver disease; chronic lung diseases, including COPD, asthma (moderate to severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension; dementia or other neurological conditions; diabetes (Type 1 and Type 2); disabilities such as Down syndrome; heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension; HIV; being immunocompromised; liver disease; having a BMI 25 or higher;

16

physical inactivity; pregnancy; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; mental health conditions; substance use disorders; and tuberculosis. *People with Certain Medical Conditions*, *supra*, https://perma.cc/923J-T5P8.

The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See COVID-19 Risks and Information for Older Adults*, Ctrs. For Disease Control & Prevention (Feb. 22, 2023), https://perma.cc/VG23-TQMM. Furthermore, "[t]he risk of severe illness from COVID-19 increases as the number of underlying medical conditions increases in a person." *People with Certain Medical Conditions*, *supra*, https://perma.cc/923J-T5P8.

### B.

To be sure, the coronavirus is "highly contagious." *Pair*, 84 F.4th at 589. At the outset of the pandemic, some of the "measures we now know to be useful in combating the spread of the virus (such as masking, separation . . . and vaccinations) were either nascent or, as in the case of vaccines, unavailable." *Id.* Nevertheless, in an effort to prevent the spread of COVID-19, the CDC urged, *inter alia*, the practice of "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, Centers For Disease Control & Prevention (Jan. 26, 2023), https://perma.cc/UJ98-2V6S; *see also Pair*, 84 F.4th at 585.

However, social distancing and "rigorous personal hygiene," which are "important combatants to the virus," are particularly difficult in the penal setting. *Seth*, 461 F. Supp. 3d at 248. Indeed, prisoners have little ability to protect themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high.").

Prisoners usually "share bathrooms, laundry and eating areas," and are often "bunked in the same cell" with several others.  Amanda Klonsky, *An Epicenter of the Pandemic Will Be Jails and Prisons, if Inaction Continues*, N.Y. TIMES (Mar. 16, 2020), https://perma.cc/3RHL-WNKU.  And, they are not free to follow their own rules.

To illustrate, prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate or distance themselves from others. *See* Kim Bellware, *Prisoners and Guards Agree About Federal Coronavirus Response: 'We Do Not Feel Safe,'* WASH. POST (Aug. 24, 2020), https://perma.cc/K6SW-LFGX (reporting use of non-reusable masks for months and a lack of transparency around policies for personal protective equipment and testing). They do not get to decide where, when, or how to eat or sleep.  Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to limit their spread.  *See Coreas v. Bounds*, TDC-20-0780, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Eddie Burkhalter et al., *Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System*, N.Y. TIMES (Apr. 16, 2021), https://perma.cc/TR7Q-8H9J ("The cramped, often unsanitary settings of correctional institutions have been ideal for incubating and transmitting the disease.  Social distancing is often not an option."); Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519–20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

On March 23, 2020, "in recognition of [the] stark reality" that COVID-19 posed substantial challenges to incarcerated individuals, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 461 F. Supp. 3d at 248.  Notably, the BOP implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020), the BOP made "extensive and professional efforts to curtail the virus's spread."

Thereafter, on March 26, 2020, then Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19.  *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020).   And, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, then Attorney General Barr issued another memorandum to Carvajal, finding "the requisite emergency . . . ."  *Hallinan*, 2020 WL 3105094, at *9.  That memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ."  *Id.*

Two BOP officials, Andre Matevousian, then Acting Assistant Director of the Correctional Programs Division, and Hugh Hurwitz, then Assistant Director of the Reentry Services Division, issued a memorandum on May 8, 2020, to implement the Attorney General's directives on the increased use of home confinement.  The memorandum provided that the BOP should prioritize for review for home confinement eligibility those inmates who have either served a certain portion of their sentence or who only have a short amount of time remaining on their sentence.

**C.**

There is no cure for the coronavirus.  But, medical therapies have continued to improve, and vaccines are now generally available.  *See Stay Up to Date with COVID-19 Vaccines*, CENTERS FOR DISEASE CONTROL & PREVENTION (Oct. 4, 2023), https://perma.cc/VZ77-KN7W.  Although the vaccines do not appear to prevent illness, they do seem to reduce the seriousness of the illness.

On January 4, 2021, at about the time the first vaccines became available, the BOP published "COVID-19 Vaccine Guidance."  *See COVID-19 Vaccine Guidance*, FEDERAL BUREAU OF PRISONS CLINICAL GUIDANCE (Jan. 4, 2021), https://perma.cc/P4KL-PEZW.  It provided that administration of the COVID-19 vaccines (Pfizer and Moderna) would "align with [recommendations of] the Centers for Disease Control and Prevention."  *Id.* at 4.  Its plan was for prisoners at heightened risk to receive priority for the vaccine.  *Id.* at 6.  The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, *Federal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, FORBES (Dec. 21, 2020), https://perma.cc/2FF2-G6PX.

As of May 11, 2023—the last day on which the CDC updated its vaccine tracker— approximately 69% of the total U.S. population had completed their primary vaccination series (i.e., one dose of a single-dose vaccine or two doses on different days), including 32% of people from ages 5 to 11, 61% of people from ages 12 to 17, 66% of people from ages 18 to 24, 72% of people from ages 25 to 49, 83% of people from ages 50 to 54, and 94% of people ages 65 and up. *See COVID-19 Vaccinations in the United States*, CTRS. FOR DISEASE CONTROL, https://perma.cc/B2KG-M4E3 (final update May 11, 2023); *Trends in Demographic Characteristics of People Receiving COVID-19 Vaccinations in the United States*, CTRS. FOR DISEASE CONTROL, https://perma.cc/6W5Q-55DR (final update May 11, 2023).

**D.**

Much has changed since the coronavirus first emerged in early 2020.  And, the virus, too, has changed repeatedly, with multiple strains and variants.

In an interview in September 2022 on the CBS television show "60 Minutes", President Biden declared that the pandemic was "over" in the United States.  Alexander Tin, *Biden Says Covid-19 Pandemic is "Over" in U.S.*, CBS NEWS (Sept. 19, 2022).  He stated: "The pandemic is over.  We still have a problem with COVID.  We're still doing a lotta work on it . . . .  But the pandemic is over."  *Id*.  And, on April 10, 2023, President Biden signed into law House Joint Resolution 7, "which terminate[d] the national emergency related to the COVID-19 pandemic."  Pub. L. No. 118-3, 137 Stat. 6 (2023).

Nevertheless, at the time of this writing, data suggests that COVID-19 remains prevalent.  *See COVID Data Tracker*, CNTRS. FOR DISEASE CONTROL & PREVENTION, https://covid.cdc.gov/covid-data-tracker/#datatracker-home   (last   updated   Dec.   16,   2023).  Moreover, available data may not provide a full picture of COVID-19's spread, because "[s]ince the end of the public health emergency on May 11, 2023, data that has been crucial to understanding the spread and impact of Covid is reported by government sources less frequently, or is  no  longer  reported  at  all."    *Track Covid-19 in the U.S.*, THE NEW YORK TIMES, https://www.nytimes.com/interactive/2023/us/covid-cases.html (last updated Dec. 27, 2023).

**IV.    Discussion**

Eggleston moves for reconsideration of his motion for compassionate release on the ground that he is not the person depicted on his "rap-sheet."  ECF 74.  He maintains that the Court has placed too much emphasis on his criminal history.  *Id.*  The government disagrees.  ECF 79.

Notably, I previously determined that, based on defendant's combined conditions of asthma and obesity, he established an extraordinary and compelling reason for compassionate release.

21

However, I also determined that release was not warranted under 18 U.S.C. § 3553(a).  It is only that ruling that I now revisit, under § 3553(a).  And, upon further review, I believe release is warranted.

As noted, defendant is presently serving a ten-year sentence.  He has already served about 85% of that sentence, which is significant.  Defendant is due to be released in about a year.  And, the BOP could place him in a halfway house prior to that time.

The defendant's prior record, although serious, does not include any lengthy period of incarceration.  Of import, defendant's sentence is almost ten times longer than any previous sentence that the defendant ever served.  So, this is not a case where, despite a lengthy period of prior incarceration, defendant continued to violate the law.  Nor does defendant's record reflect any convictions for a crime of violence or a handgun offense.

Notably, the drug quantity at issue in this case was rather small.  Indeed, the PSR describes the quantity as "nominal."  ECF 44 at 6, ¶ 13.  This is consistent with defendant's criminal history, which indicates that he was primarily a street-level drug dealer.  Nevertheless, based on defendant's record of prior felony drug convictions, two of which involved marijuana, defendant qualified as a Career Offender.  That designation drastically increased defendant's base offense level for Count One, from 6 to 32.  Obviously, the offense level substantially affected defendant's Guidelines.

To my knowledge, defendant has been compliant within the BOP.  And, given his age, the risk of recidivism has diminished.  *See United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014).  It is also noteworthy that, as discussed in ECF 90, the defendant had anticipated credit of eleven months from the BOP towards his sentence.  But, he did not receive that credit.  If that credit had been awarded, as anticipated, defendant would have already been released.

Finally, I note that defendant has been incarcerated throughout the entirety of the pandemic.

And, I am mindful that the punitive effect of a sentence served during the pandemic is greater than that of a sentence served under normal conditions. *See United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("[T]he actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

## V.  Conclusion

In sum, a reduction of defendant's sentence to time served plus fourteen days is consistent with the sentencing factors under 18 U.S.C. § 3553(a).  Despite the relatively small reduction, the sentence would continue to reflect the seriousness of the offense and provide just punishment.  But, a reduction would promote respect for the law, because the sentence was quite harsh when measured against the drug quantity involved and the fact that defendant had never previously served more than a few months in custody.

For the reasons stated, I shall reduce defendant's sentence to time served plus 14 days.  All terms of supervised release shall remain unchanged.  An Amended Judgment shall issue.

An Order follows.


Date:  January 12, 2024                                    _____/s/_____

                                                                                Ellen L. Hollander
                                                                                United States District Judge

23